**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3041-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CARLOS ANTONETTI,

    Defendant-Appellant.

_____

Submitted December 10, 2025 – Decided April 22, 2026

Before Judges Currier, Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 15-03-0617.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Richard Sparaco, Designated Counsel, on the brief).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Rachel Lamb, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a supplemental brief on appellant's behalf.

PER CURIAM

Defendant appeals from an April 5, 2023 order denying his petition for post-conviction relief (PCR). After reviewing the contentions in light of the record and applicable principles of law, we affirm with the exception of the issue regarding defendant's waiver of his right to represent himself. We remand for an evidentiary hearing solely on that issue.

I.

In connection with a horrific series of offenses during which defendant kidnapped the victim F.P., tied her up, bound her to the sides of a van with zip ties, and buried her while she was still alive, defendant was convicted of: first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2); first-degree kidnapping, N.J.S.A. 2C:13(b)(1); first-degree felony murder (kidnapping), N.J.S.A 2C:11-3(a)(3); second-degree robbery, N.J.S.A. 2C:15-1(a); and first-degree felony murder (robbery), N.J.S.A. 2C:11-3(a)(3).

Defendant was sentenced to life without parole on the murder conviction, a consecutive twenty-year sentence on the kidnapping conviction, and a consecutive eight-year term on the robbery conviction.

We affirmed defendant's conviction and sentence on appeal. State v. Antonetti, No. A-3494-17 (App. Div. June 25, 2020). The evidence was

2

discussed in detail in our opinion and need not be repeated here. To summarize, the State presented overwhelming evidence of defendant's guilt, including testimony from a co-defendant who described the details of defendant's actions regarding F.P., testimony from eyewitnesses who identified defendant, and defendant's DNA evidence on a t-shirt found around the victim's neck and on zip ties found in defendant's truck. An autopsy concluded that F.P. died from asphyxiation.

## II.

Defendant filed a PCR petition, raising numerous issues of ineffective assistance of trial and appellate counsel. The judge who presided over the trial also considered and ruled on the PCR petition. The court granted an evidentiary hearing on two issues raised by the petition: whether there was a language barrier between defendant and trial counsel, and whether trial counsel failed to investigate an intoxication defense.

After the hearing, the court issued a detailed oral decision denying defendant PCR relief on the two issues considered during the evidentiary hearing. Defendant does not contest those rulings on appeal. The court also considered and rejected defendant's additional arguments for PCR in its oral decision. A memorializing written order followed.

3

On this appeal, defendant presents the following points of argument in the counseled brief:

POINT I
THE PCR COURT ERRED IN DENYING DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING ON HIS MULTIPLE CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL.

(A) THE DEFENDANT WAS ENTITLED TO AN EVIDENTIARY HEARING WHERE HE ESTABLISHED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL IN THE FAILURE OF TRIAL COUNSEL TO CALL TWO WITNESSES AT TRIAL.

(B) THE DEFENDANT WAS ENTITLED TO AN EVIDENTIARY HEARING WHERE HE ESTABLISHED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL IN THE FAILURE OF TRIAL COUNSEL TO OBJECT TO ALL REFERENCES TO SEX[UAL] ASSAULT.

(C) DEFENDANT WAS ENTITLED TO AN EVIDENTIARY HEARING BECAUSE HE PRESENTED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO COUNSEL'S FAILURE TO CROSS-EXAMINE WITNESSES WITH THEIR PRIOR INCONSISTENT STATEMENTS.

(i) FAILURE TO CROSS-EXAMINE THE COOPERATING CODEFENDANT ON

HIS PRIOR INCONSISTENT STATEMENTS.

(ii) FAILURE TO CROSS-EXAMINE GERVIN PERKINS ON HIS PRIOR INCONSISTENT STATEMENTS.

(D) THE DEFENDANT PRESENTED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL DUE TO TRIAL COUNSEL'S FAILURE TO CROSS-EXAMINE THE SEROLOGIST ON KEY EVIDENCE.

(E) THE DEFENDANT WAS ENTITLED TO AN EVIDENTIARY HEARING BECAUSE HE ESTABLISHED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO INFORM HIM THAT HE FACED A LIFE SENTENCE WITHOUT PAROLE IF HE WERE CONVICTED.

(F) THE DEFENDANT WAS ENTITLED TO AN EVIDENTIARY HEARING BECAUSE HE ESTABLISHED A PRIMA FACIE CASE OF INEFFECTIVE ASSISTANCE OF COUNSEL WHE[N] TRIAL COUNSEL FAILED TO PRESENT A DEFENSE OF THIRD-PARTY GUILT.

(G) THE DEFENDANT WAS ENTITLED TO AN EVIDENTIARY HEARING BECAUSE HE PRESENTED A PRIMA FACIE CASE THAT TRIAL COUNSEL WAS INEFFECTIVE BECAUSE HE FAILED [TO] BRING OUT [TESTIMONY] ON CROSS-EXAMIN[ATION] OF THE MEDICAL EXAMINER THAT

5

WOULD HAVE NEGATED THE ARGUMENT THAT THE VICTIM WAS BURIED ALIVE.

POINT II
THE PCR COURT ERRED IN DETERMINING THAT THE DEFENDANT WAS PROCEDURALLY BARRED FROM PRESENTING THE ARGUMENT THAT HE WAS DENIED THE RIGHT TO PROCEED PRO SE AT TRIAL: THE COURT MISTAKENLY RELIED UPON A FACT THAT WAS NOT ON THE RECORD, AND THIS ARGUMENT COULD NOT HAVE BEEN RAISED ON DIRECT APPEAL.

POINT III
THE MATTER MUST BE REMANDED FOR A NEW HEARING WHERE THE PCR COURT IMPROPERLY DENIED DEFENDANT'S ADJOURNMENT REQUEST IN ORDER TO OBTAIN A DNA EXPERT REPORT.

In a supplemental self-represented brief, defendant raises additional points for our consideration:

POINT 1
THE TRIAL AND PCR COURT'S FUNDAMENTAL VIOLATION OF ANTONETTI'S SIXTH AMENDMENT RIGHT TO SELF-REPRESENTATION

A. The Trial Court's Failure to Conduct a Proper Faretta Colloquy.

B. The Court's Provocative Conduct and Unlawful Interference with Antonetti's Right to Self- Representation.

6

C. The Court's Persistent Denial of Antonetti's Right to Self-Representation via the Two Ignored Letters.

D. The PCR Court's Erroneous Ruling.

E. Factual Elements in Support of Sixth Amendment Violation.

POINT II
ANTONETTI'S FEDERAL AND STATE DUE PROCESS RIGHTS TO A FAIR TRIAL WERE VIOLATED BECAUSE THE PROSECUTOR FAILED TO CORRECT THE MEDICAL EXAMINER'S FALSE TESTIMONY, AND KNOWINGLY USED THE SAME FALSE TESTIMONY AND THE PCR COURT UNREASONABL[Y] APPLIED THE LAW AND MADE UNREASONABLE DETERMINATION[S] OF FACT.

POINT III
INEFFECTIVE ASSISTANCE OF COUNSEL

A. Trial and Appellate Counsels' Failure to Support Claim to Charge the Jury with Manslaughter should be Considered Deficient Performance which establishes Both Strickland Prongs.

B. Trial Counsel's Failure to Challenge, Confront, Impeach and Properly Cross-examine Key Witnesses with Readily Available Documentary Evidence Should Amount to Deficient Performance that Establishes Both Strickland Prongs.

1. Trial Counsel's failure to confront, impeach and properly cross-examine co-defendant Ortiz, the prosecution's key witness should amount to

7

deficient performance establishing both Strickland prongs.

2. Trial Counsel's failure to confront, impeach and cross-examine the Medical Examiner, on a key issue should amount to deficient performance establishing both Strickland prongs.

3. Trial Counsel's failure to properly cross-examine the prosecution's Forensic Serologist and DNA analyst on key evidence should amount to deficient performance establishing both Strickland prongs.

4. Trial Counsel's failure to properly cross-examine or call as a defense witness CSI Detective Rummell on key evidence should amount to deficient performance establishing both Strickland prongs.

5. Trial Counsel's failure to properly cross-examine Gervin Parks should amount to deficient performance.

6. Trial Counsel's failure to confront, cross-examine, or call as a defense witness Detective Villano, on a key issue, should amount to deficient performance.

C. Trial Counsel's Failure to Object to Highly Prejudicial False Testimony and Improper Comments Should Amount to Deficient Performance.

D. Trial Counsel's Failure to Support His Defense Reasoning and Subject the Prosecution's Case to a Meaningful Adversarial Testing Should Amount to Deficient Performance that Establishes Both Strickland Prongs.

A-3041-22

1. Trial Counsel failed to elicit helpful testimony from any witness because of his flawed understanding of the facts.

2. Trial Counsel failed to investigate any of the forensic (DNA) evidence by consulting with readily available Public Defender DNA experts and consequently asked pointless questions to the prosecution's DNA experts.

3. Trial Counsel failed to investigate [F.P.]'s cause of death by consulting with readily available Public Defender pathologist or Medical Examiner consequently asked the prosecution's Medical Examiner no questions.

4. Trial Counsel failed to consult with any expert on the effects of heroin and thus made outrageous claims to the jury during summation.

5. Trial Counsel's failure to impeach Ortiz and the Medical Examiner with prior inconsistent statements deprived Antonetti of a prior inconsistent statement charge pursuant to [State v. Allen, 308 N.J. Super. 421, 429 (App. Div. 1998)].

E. Trial Counsel's Failure to Move to Suppress Antonetti's Incriminating Statement to the Police Obtained by Exploitation of an Illegal Arrest and for Failing to Move to Suppress Gervin Parks Suggestive and Unreliable Photo and In-Court Identifications Should Amount to Deficient Performance that Establishes Both Strickland Prongs.

F. Trial Counsel's Failure to Communicate with Antonetti Should be Considered Deficient Performance that Establishes Both Strickland Prongs.

1. Trial Counsel failed to provide Antonetti with pertinent discovery within time so he could make reasonable decisions.

2. Trial Counsel failed to have pertinent discovery and court documents translated and transcribed and provided to Antonetti so he could make reasonable decisions.

3. Trial Counsel failed to communicate with Antonetti with a translator about the prosecution's plea offers.

4. Trial Counsel failed to communicate with Antonetti pre-trial with a translator.

5. Trial Counsel and defendant's attorney client relationship was so poor, counsel was unable to prepare defense trial.

G. The Trial Court Erred when it Failed to Excuse a Juror who, Because of Extraneous Information, Tainted the Jury and Denied Antonetti the Right to a Trial by an Impartial Jury Should Amount to Deficient Performance that Establishes Both Strickland Prongs. Trial Counsel's Failure to Move to Excuse same Juror Should be Considered Deficient Performance that Establishes Both Strickland Prongs and Appellate Counsel's Failure to Move Same Claim on Direct Appeal Should Amount to Deficient Performance Meeting Both Strickland Prongs.

H. Cumulative Errors Denied Antonetti The Right To A Fair Trial.

A.

A defendant seeking PCR on the grounds of ineffective assistance of counsel must demonstrate that counsel's performance was deficient and that the defendant suffered prejudice as a result of that performance. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987).

Merely raising a claim of ineffective assistance for post-conviction relief does not entitle a defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

> Rather, trial courts should grant evidentiary hearings only if the defendant has presented a prima facie claim of ineffective assistance of counsel under the Strickland two-pronged test, material issues of disputed fact lie outside the record, resolution of the issues necessitate a hearing . . . and when "the attorney's testimony may be required."
>
> [State v. L.G.-M., 462 N.J. Super. 357, 364-65 (App. Div. 2020) (quoting State v. Preciose, 129 N.J. 451, 462 (1992)).]

To establish a prima facie case, the defendant must demonstrate a reasonable likelihood that his or her claim will succeed on the merits. Preciose, 129 N.J. at 463. To be entitled to an evidentiary hearing, "bald assertions are not enough"; "rather, the defendant 'must allege facts sufficient to demonstrate counsel's

11

alleged substandard performance.'" State v. Jones, 219 N.J. 298, 311-12 (2014) (quoting State v. Porter, 216 N.J. 343, 355 (2013)).

The determination to deny an evidentiary hearing on a PCR petition is reviewed under an abuse of discretion standard. L.G.-M., 462 N.J. Super. at 365. Where the trial court does not conduct an evidentiary hearing on a PCR petition, we will "review de novo the factual inferences the court has drawn from the documentary record." Id. at 361.

1.

In point II of his counselled brief, defendant argues that the PCR court erred in finding he had waived the question of whether he was improperly denied the right to proceed self-represented at trial because he did not pursue the issue on direct appeal. Relatedly, in point I of his self-represented brief, defendant contends the trial court failed to comply with the requisite process for determining whether he could represent himself at trial.

At a pre-trial hearing, defendant told the court that he did not want to be represented by his current attorney, who was not the attorney who later represented him at trial, and that he wanted to represent himself. The court advised defendant that it would make that determination at a hearing the following week. At the ensuing hearing, the court questioned defendant about

his desire to represent himself. At the conclusion of the colloquy, defendant told the court that he would "think it over."

At the next hearing date, in October 2016, defendant indicated that he wanted to pursue his motion to represent himself. As the court began to question defendant regarding his waiver of the right to counsel, defendant started cursing and spat "in the direction of his attorney." The court removed defendant twice from the courtroom. The court attempted to conduct a colloquy with defendant regarding his self-representation request but could not proceed because of defendant's conduct. The court stated:

> The [c]ourt is trying to conduct a colloquy with [defendant]. He[] [is] not controlling himself. So therefore, I cannot conduct a hearing based on his conduct, which I find for the record, is being exhibited to cause undue delay in the trial. . . .
>
> If, for the record, [defendant] decides he wants to control himself, he wants to renew the application, I'll hear it . . . .

Defendant was assigned a new trial attorney in January 2017. The appendix submitted on appeal contains letters defendant alleges he sent to the court in February and October 2017 requesting that he be permitted to represent himself. PCR counsel states these notes were included in defendant's self-represented supplemental brief in support of PCR. The letters were not

13

mentioned in counsel's brief and were not brought to the court's attention when it ruled on the PCR.

There is no indication in the record whether the court received this correspondence or whether there was a response. The record does reflect there was considerable communication between defendant and his counsel during this time period before trial. During the PCR hearing, trial counsel testified they "met with him frequently to discuss the case." When the trial began in November 2017, defendant did not request to proceed self-represented, nor did he do so during the month it took to complete the trial.

The PCR court held that defendant was "procedurally barred" from raising the issue because "that's an issue that he should [have] raise[d] on appeal," and that an evidentiary hearing was not required. It added:

> When [defendant] first made a decision saying he wanted to represent himself [he] was disruptive. He was exhibiting contemptuous behavior. He would not allow this court to speak. . . .
>
> The transcript is clear that . . . defendant . . . indicated he wanted more time to think it over if he wanted to represent himself and I granted him that opportunity. I attempted to conduct a colloquy with him. . . .
>
> He interrupted the court continuously. Because of his contemptuous conduct, cursing in the court . . . [t]he court could not go through with that hearing. As

14

I tried to explain to him why I needed to make a record, [] I could not continue because he would not calm down and cooperate with the hearing. . . .

I certainly stated that the application was denied. He could make that application again if he wished and that I would hear it. But because of his contemptuous behavior this court could not hear that application.

. . . .

[D]efendant's application to proceed pro se was denied without prejudice based on his own conduct. He was certainly advised that he could have renewed his application to proceed pro se. There were no other applications pursued to proceed pro se. Again, that's an issue he should have raised []on appeal. He's barred from raising it here.

[Paragraph breaks added.]

The court added that defendant's application was made prior to his representation by the current trial counsel. And after obtaining new counsel, "there was no other application made to proceed pro se."

Under Rule 3:22-4(a), any ground for relief not raised at trial or on direct appeal "is barred from assertion" in a petition for PCR unless the ground for relief "could not reasonably have been raised" in the prior proceeding, enforcement of the bar would result in fundamental injustice, or the denial of relief "would be contrary to a new rule" of state or federal constitutional law. "A ground could not reasonably have been raised in a prior proceeding only if

15

defendant shows that the factual predicate for that ground could not have been discovered earlier through the exercise of reasonable diligence." Ibid.

A defendant has a Sixth Amendment right to represent himself at trial so long as the defendant has voluntarily and intelligently waived the right to counsel. Faretta v. California, 422 U.S. 806, 835 (1975). However, the trial court should "indulge [in] every reasonable presumption against waiver." State v. King, 210 N.J. 2, 19 (2012) (alteration in original) (quoting State v. Gallagher, 274 N.J. Super. 285, 295 (App. Div. 1994)). A defendant's request must be clear and unequivocal, and the trial court must ascertain whether the waiver of the right to counsel is knowing, voluntary and intelligent after advising the defendant of the risks and pitfalls of self-representation. Faretta, 422 U.S. at 835; State v. DuBois, 189 N.J. 454, 468-69 (2007). However, the right of self-representation is not absolute; the court may deny self-representation if it would interfere with the State's interest in fair trials and the reliability of the outcome. King, 210 N.J. at 18.

After defendant requested to represent himself, the court promptly scheduled a Faretta hearing. However, as the court described, defendant was uncooperative, obstructive, disrespectful and used vulgar language as the court attempted to determine whether defendant was knowingly waiving his right to

16

counsel. The court denied defendant's request due to his contemptuous conduct. Any arguments regarding that order should have been raised on direct appeal.

However, in this appeal, defendant alleges that he attached two letters in support of his self-represented PCR petition. He claims to have sent these letters to the court in 2017, after the assignment of new counsel, in which he reasserted his request to proceed self-represented. There is no further evidence regarding this correspondence and based on the PCR court's comments, it does not appear it received the correspondence or noted it in the PCR petition.

The claim specific to these two letters was appropriate for PCR review because the issue of whether defendant waived his right to represent himself through his conduct requires a review of evidence outside the trial record. See State v. Rose, 458 N.J. Super. 610, 624-25 (App. Div. 2019). The evidence

> may include evidence of discussions between defendant and his appointed counsel. Those discussions may reflect how defendant perceived the court's non-response to his self-representation request, and whether defendant intentionally relinquished it thereafter. Consequently, defendant's claim is appropriate for PCR review because it could not have been fully considered on direct appeal.
>
> [Ibid.]

The court may also consider whether defendant waived his right as he proceeded to a lengthy trial without raising the issue again. See Faretta, 422 U.S. at 835-36.

Therefore, we remand to the PCR court for an evidentiary hearing as to whether defendant was improperly denied his constitutional right of self-representation solely as to the referenced documents presented in the self-represented PCR appendix.

2.

Defendant claims that his trial counsel was ineffective for failing to call Jose DeJesus and Angel Cintron as witnesses because they would have created reasonable doubt as to whether co-defendant or defendant was the primary actor and would have undermined co-defendant's credibility.

In rejecting defendant's argument, the PCR court found the decision not to call the witnesses was a "strategic one." Defendant has not presented any affidavits or certifications from either witness detailing the testimony they would have given at trial. Instead, defendant provided his own certification which the PCR court found to be a "bald assertion." The court also concluded that defendant had failed to show that the outcome of the case would have been different had the two witnesses testified. The PCR court did not abuse its

18

discretion by not granting an evidentiary hearing as to counsel's failure to call DeJesus and Cintron as witnesses.

3.

In point I(C), (D) and (G) of his counselled brief, and points III(B), III(C) and III(D)(1), (3) and (5) of his self-represented brief, defendant argues that he established a prima facie case of ineffective assistance of counsel due to his attorney's failure to sufficiently cross-examine several witnesses and thus was entitled to an evidentiary hearing. The PCR court considered defendant's contentions and found defense counsel had cross-examined each witness. Furthermore, the court concluded that defendant could not establish a prima facie case of ineffective assistance of counsel.

Specifically, regarding the medical examiner, defense counsel conferred with defendant after the direct examination concluded and then told the court he had no questions. The PCR court found that counsel exercised "sound trial strategy" in not cross-examining the medical examiner. The PCR court did not abuse its discretion in denying defendant an evidentiary hearing on any of the claims of deficient cross-examination.

19

4.

In point III of his counselled brief, defendant argues that the PCR court improperly denied his request for an adjournment so he could obtain a DNA expert report. In points III(D)(2) and (4) of his self-represented brief, defendant asserts that he received ineffective assistance of counsel because his trial attorney failed to consult with DNA and heroin experts regarding the physical evidence and co-defendant.

Prior to the start of the PCR hearing, defense counsel informed the court that defendant did not believe he had all the discovery he needed to prepare for the hearing. Specifically, counsel stated that he had requested a DNA expert from the public defender's office four or five months earlier but had not yet received a report. Counsel told the court that defendant believed there were items that should have been tested that would have affected co-defendant's credibility. These included a shirt that was wrapped around F.P.'s neck and zip ties found in the van. Both items were found to contain defendant's DNA. The court stated that it was proceeding with the hearing as it was not going to relitigate a discovery issue but if defendant chose to file a subsequent application regarding the DNA report that was his prerogative.

20

A motion for an adjournment is addressed to the discretion of the court, and its denial will not lead to reversal unless it appears that the defendant has suffered a manifest wrong or injury. State v. Hayes, 205 N.J. 522, 537 (2011).

Defendant has not demonstrated he was prejudiced by the denial of an adjournment. He sought DNA testing on items of evidence already tested to see whether co-defendant's DNA was present. However, even if such DNA were present, defendant does not offer the relevancy of such evidence, other than a vague suggestion that it would have affected co-defendant's credibility. Given co-defendant's admitted involvement in the crime, the presence of his DNA would not have been a surprise, nor could it have changed the outcome of the trial. The PCR court did not abuse its discretion by denying the adjournment request.

As for the trial experts, the PCR court rejected defendant's ineffective assistance of counsel argument because he failed to provide a certification or affidavit as to what a DNA expert would have said.

In his self-represented brief, defendant argues that trial counsel was ineffective because they "failed to consult with any expert on the effects of heroin" and failed to consult with Public Defender DNA experts. However, these arguments are only listed as subpoint headings without any support or

21

discussion in the body of the brief. They will not be considered without adequate legal argument. See State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977). Moreover, it does not appear that defendant raised the heroin expert argument before the PCR court.

5.

In point I(E) of his counselled brief, and point III(F) of his self-represented brief, defendant claims that he received ineffective assistance of counsel at trial because of his attorney's failure to inform him that he faced life imprisonment without parole if he were convicted and because of difficulties he had communicating with his attorney due to language differences.

During a pre-trial conference, the trial court told defendant that if he were convicted on count one (first-degree murder), he faced life in prison without parole. Defendant told the court that he understood. Later in the conference, the court asked defendant if he understood that if convicted the maximum parole ineligibility on count one was life, which was "75 years and above." Defendant replied, "Yes."

In rejecting defendant's argument that trial counsel failed to inform him that he faced a life sentence without parole if he were convicted, the PCR court was satisfied that defendant "was adamant" that he would go to trial. The court

stated that, prior to trial, it told defendant that he was facing seventy-five years without parole, and that technically he was facing a possible sentence of 240 years. It added: "The record is clear, [on] June 6 [sic], 2016[,] he was advised that he was looking at a life sentence without parole." Therefore, the PCR court held that there was no ineffective assistance on this issue and that no evidentiary hearing was necessary.

In addition to the colloquy with the trial court discussed above, at a subsequent hearing defendant told the court, when asked whether he understood the charges in the indictment, "I'm facing life without parole." The court further told him that life meant seventy-five years or more and that it "means you'll never get out."

We are satisfied the PCR court did not abuse its discretion by not holding an evidentiary hearing on this issue. The trial record clearly establishes that defendant was informed, and understood, that he faced life imprisonment without parole if he were convicted.

As for communication, the PCR court granted an evidentiary hearing on this issue, during which both defendant and trial counsel testified. Counsel stated that he did not speak Spanish, but that defendant communicated with him in English. He told defendant that an interpreter could be present should he want

one, but defendant made no such request. Counsel and defendant also sent letters to one another in English.

Defendant testified at the PCR hearing through an interpreter that his primary language is Spanish. He came to New Jersey from Puerto Rico in 2004 when he was twenty-six. He stated that he began to speak English when he went to jail. He claimed that his correspondence with counsel while he was in jail was written and translated by a fellow inmate. Defendant further testified that counsel visited him in prison three times, only one time with an interpreter, even though defendant told him that he needed an interpreter.

The PCR court found counsel's testimony that he was able to communicate with defendant in English to be "exceedingly credible." This was corroborated, according to the court, by letters counsel sent to defendant confirming their discussions, including plea negotiations and defendant's custodial statement. The court concluded:

> I find that [d]efendant has failed to point to a single instance where communication with his attorney was rendered ineffectual. Defendant has failed to show any circumstance which indicated that his understanding of the proceeding was impaired to his detriment. I also find that there has not been a showing of any language barrier that would implicate a violation of . . . [d]efendant's rights.

24

Defendant offers no argument to dispute these findings other than to claim that counsel did not communicate with him using an interpreter prior to trial and did not translate letters and documents sent to him. That does not address the PCR court's conclusion that there was no language barrier between defendant and his trial attorney. Therefore, the PCR court did not abuse its discretion by concluding that defendant and counsel were able to communicate in English.

6.

In point I(F) of his counselled brief, defendant maintains that he was entitled to an evidentiary hearing because he established a prima facie case of ineffective assistance of counsel due to counsel's failure to assert a third-party guilt defense regarding co-defendant.

In rejecting this argument, the PCR court stated:

> I find that trial counsel really did argue [that defense]. There was no charge requested for third party guilt. There's no question of [co-defendant's] guilt. [He] admitted his guilt. He admitted that he was part of the kidnapping and the killing of the victim in this case. The jury heard that. The charge of accomplice liability was read to the jury. . . . [Defense counsel] argued that the semen found from the victim did not match the defendant or co-defendant. He said that suggest[ed] . . . that there was someone else involved here. So although no third party defense charge was requested[,] defense counsel certainly attempted to create that third party guilt.

A-3041-22

In addition, because the evidence in the case against defendant was "overwhelming," the court found that defendant had failed to establish a prima facie case of ineffective assistance of counsel and no evidentiary hearing was required on that issue.

In summation, defense counsel argued that co-defendant's drug use impacted his memory and his ability to think and reason. Counsel also claimed that co-defendant was driving the van in which the victim was held and that it was co-defendant who went into the stores to purchase items to detain and bury F.P. Therefore, counsel sought to attach blame to co-defendant within the confines of the facts of the case and co-defendant's testimony regarding defendant's involvement. As the PCR court noted, in referring to the semen found in F.P., counsel told the jury: "The semen does not come back to my client. In fact, as I recall the semen doesn't even come back to [co-defendant], which leads me to believe . . . there is someone else . . . at issue here that the police have failed to investigate." Therefore, counsel clearly suggested third party guilt on co-defendant's part and as to an unnamed third party.

The PCR court did not abuse its discretion in denying defendant an evidentiary hearing on this third-party guilt claim.

26

7.

In point I(B) of his counselled brief, defendant contends he was entitled to an evidentiary hearing because he established a prima facie case of ineffective assistance of counsel resulting from trial counsel's failure to object to references to sexual assault during the State's questioning of its forensic expert.

In her opening statement, the prosecutor remarked:

> [W]e're not going to be able to answer every question in this case. We may not be able to establish what happened between [F.P.] and . . . defendant that led to her being tied up in the back of his . . . van. We may not be able to prove who pulled her pants down, or why, or how they came down. But, the evidence will show that there's no indication of any injuries to any parts of her genital areas, and no one is charged with any kind of sex assault in this case.

During the State's questioning of crime scene investigator Victoria Fallon, the prosecutor asked Fallon to identify what was in one of the photographs of F.P.'s body at the time of its discovery. Fallon responded that the photograph showed F.P.'s legs tied with a rope and "the jeans are kind of balled up around her ankle."

The PCR court concluded that defendant

> has not shown any prejudice with this failure to object to the State's expert testimony. The testimony put before the jury was that there was no sexual assault of the victim's body and that the defendant nor [co-

27

defendant] was . . . the source of the semen found in the victim's body.

On direct appeal, we considered whether these references warranted reversal of defendant's conviction and found they did not. The PCR court did not abuse its discretion by concluding that counsel's failure to object to those references did not warrant an evidentiary hearing.

8.

In point III(E) of his self-represented brief, defendant argues that he was not provided with the effective assistance of counsel because trial counsel did not move to exclude an incriminating statement defendant made to the police, or to suppress a witness's photo identification on the ground that the witness had seen defendant's photograph on television prior to the identification.

Defendant moved to suppress a statement he gave to police after his arrest. Although the motion was denied, the State did not use the statement at trial. Therefore, the PCR court found defendant's argument was meritless.

As for the issue regarding the witness's identification, this was a point that defendant could have raised on direct appeal but did not. Therefore, it is barred by Rule 3:22-4(a). Moreover, defendant fails to support his claim that counsel should have moved to suppress the identification as highly suggestive and unreliable. The record only indicates that the witness learned about the murder

while watching the news. As the PCR court stated: "[N]either the transcript nor defense exhibits demonstrate that [the witness] saw the defendant on the news before making this identification." The PCR court did not abuse its discretion in declining to grant an evidentiary hearing.

## 9.

In point II(A) of his self-represented brief, defendant asserts that both his trial and appellate counsel were ineffective because they failed to offer a factual basis to establish that F.P. could not have been alive when she was buried to support an aggravated manslaughter charge. The PCR court held that defendant's argument was precluded because it was already adjudicated in the direct appeal. We agree that defendant's PCR argument on this issue was barred under Rule 3:22-5.

## 10.

In point III(G) of his self-represented brief, defendant argues that trial counsel was ineffective by not requesting that a juror be excused for conflict of interest and that appellate counsel was ineffective by not raising the issue on direct appeal.

During Detective Rummell's testimony, the court learned that one of the jurors thought she recognized Rummell and that he may have been a soccer

A-3041-22

coach for her daughter three years earlier. The court examined the juror, who stated that although she may have exchanged e-mails with Rummell in a group e-mail, she did not "know him personally." The juror told the court that she could be fair and impartial and that she had not discussed the matter with any of the other jurors.

The court then asked defense counsel whether there were any questions he would like the court to ask the juror. After conferring with defendant, counsel responded that defendant wanted him to ask the juror whether she was influenced by Rummell being her daughter's coach. The court denied the request and found the juror was credible and that she could be fair and impartial.

In denying defendant's PCR petition on this issue, the court stated there was nothing presented to indicate that the juror could not be fair and impartial and serve on the case.

Defendant argues that his trial counsel was ineffective because counsel did not move to excuse the juror. However, given the court's determination that the juror was credible and capable of being fair and impartial, any request by counsel to excuse the juror would have been futile. Therefore, defendant failed to make a prima facie case that would have warranted an evidentiary hearing.

Defendant also claims that his appellate counsel was ineffective for not raising the issue on direct appeal. Since we have concluded trial counsel was not ineffective, it follows that appellate counsel was not ineffective in not raising this issue in the direct appeal.

Affirmed in part, reversed in part, and remanded solely for an evidentiary hearing as to whether defendant was improperly denied his constitutional right to self-representation. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

31

A-3041-22